Gilmar Alexander GUEVARA,
Appellant,

v.

The STATE of Texas on Direct Appeal.

No. 74141.

Court of Criminal Appeals of Texas.

Jan. 15, 2003.

J. Sidney Crowley, Houston, for Appellant.

Shirley Cornelius, Asst. DA, Houston, Matthew Paul, State's Atty., Austin,for State.

## *OPINION*

MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., PRICE, JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., Joined.

In May 2001, a jury convicted appellant of capital murder. TEX. PENAL CODE ANN. § 19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.071, sections 2(b) and 2(e), the trial judge sentenced appellant to death. Art. 37.071, § 2(g).[1] Direct appeal to this Court is automatic. Art. 37.071, § 2(h). Appellant raises three points of error. Because appellant challenges the sufficiency of the evidence at punishment, we will set out the pertinent facts. We affirm.

### STATEMENT OF FACTS

Around 12:10 a.m. on June 2, 2000, officers responded to a reported burglary and shots fired at a convenience store on Ranchester Street in Houston. Upon arrival, they discovered the bodies of Tae Youk and Gerardo Yaxon lying inside the store. Both had been shot and were dead. On June 10, the police arrested appellant in Texas City pursuant to a warrant. Shortly thereafter, they obtained his consent to search his Texas City apartment and his vehicle. Officers also obtained appellant's wife's consent to search the apartment.

During the search of appellant's car, officers recovered three pullover masks.[2] From appellant's apartment, officers re-

---

1. Unless otherwise indicated all future references to Articles refer to the Code of Criminal Procedure.

2. In an audiotaped statement to the police, appellant explained that he and two co-defendants were wearing masks at the time of the alleged offense.

covered a .40–caliber Smith & Wesson pistol, a .380–caliber Bersa pistol, a box of .40–caliber ammunition, and a box of .380–caliber ammunition. The firearms examiner testified that the Smith & Wesson pistol recovered at appellant's apartment fired the bullets recovered at the crime scene. The examiner also testified that the manufacturer who made the .40–caliber ammunition recovered from appellant's residence also made the bullets recovered at the crime scene. DNA samples recovered from one of the masks matched both appellant's and one of his co-defendant's DNA samples.

Appellant subsequently gave an audiotaped statement to the authorities explaining the events on the evening of the murders. In his statement, appellant stated that he was riding around in his van with some friends that evening when someone said, "[L]et's go to the store there." Appellant and two others approached the store to "get the money." When appellant first entered the store, one of the store attendants hit him. At that time, one of his co-defendants told him to "shoot, shoot, shoot," and appellant shot at the attendant. Appellant claimed that he did not remember how many shots he fired but that he did not want to hurt anyone. Appellant and his accomplices left the store without taking anything.

## SUFFICIENCY OF THE EVIDENCE AT PUNISHMENT

■ In his third point of error, appellant claims that the evidence presented at trial was legally insufficient to support the jury's finding that he would be a continuing threat to society. See Art. 37.071 § 2(b)(1). In reviewing the sufficiency of the evidence at punishment, this Court looks at the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could

have believed beyond a reasonable doubt that appellant would probably commit criminal acts of violence that would constitute a continuing threat to society. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Allridge v. State, 850 S.W.2d 471 (Tex.Crim.App. 1991), cert. denied, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). The facts of the crime alone can be sufficient to support the affirmative finding to the future dangerousness special issue. Allridge, 850 S.W.2d at 488. In addition to the circumstances of the case, other evidence, such as prior bad acts and uncharged conduct, prior criminal record, psychiatric evidence, and character evidence may support the finding. Hayes v. State, 85 S.W.3d 809, 814 (Tex.Crim.App.2002).

■ The evidence presented at trial demonstrates appellant's complete disregard for the sanctity of human life. In his statement to the police, appellant told the police that the reason he shot one of the victims was because he was urged to do so by a co-defendant. The State also presented evidence revealing appellant's lack of remorse over the murders. During the punishment phase of the trial, the State presented evidence, that within hours after committing the instant double homicide, appellant shot and killed an apartment security guard for the sole purpose of taking his gun.

Further, the State presented evidence of a number of prior crimes appellant had committed. On May 5, 1994, appellant was arrested for unlawfully carrying a weapon. On December 19, 1994, appellant was arrested for driving a stolen vehicle. In January 1995, appellant was arrested for selling a stolen vehicle to undercover police officers working an auto-theft sting operation. As briefly discussed below in point of error two, on February 11, 2000, appellant and another masked man robbed

Ahmed Fraz and two of his friends. During this incident, Fraz stated that appellant put a gun to his head and pulled the trigger, but the gun did not discharge. Appellant then beat him and one of Fraz's friends with his pistol, causing very serious and permanent injuries to the friend. Appellant subsequently announced to friends that he had robbed and beat up "some Ghandis [sic]." Finally, appellant used a credit card that he had taken from Fraz to purchase items at an adult ware store.

Ballistics testing also connected appellant to a robbery that occurred on May 20, 2000, at a Houston convenience store. During this incident, two masked individuals entered the store with guns in hand. One of the individuals placed his gun to an employee's head, and the victim heard him chamber a round as if he was getting ready to fire. The owner of the store then distracted the man, and the perpetrator advanced toward him. Shortly thereafter, both assailants opened fire, and the owner was shot in the arm.

Taken together, the facts of the instant case and appellant's history, which shows an escalating pattern of violence, permit a rational jury to conclude that appellant would continue to be a threat to society. Accordingly, we hold the evidence legally sufficient to support the jury's affirmative answer to the future dangerousness issue. *Jackson*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *Allridge*, 850 S.W.2d 471. Point of error three is overruled.

## MOTION TO SUPPRESS

■ In his first point of error, appellant claims that the trial court reversibly erred in overruling his motion to suppress evidence that was obtained through the warrantless search of appellant's automobile and apartment. Appellant correctly notes that under the Fourth and Fourteenth Amendments a search conducted without a warrant issued upon probable cause is *"per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)(quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). He also correctly recognizes that a search conducted with the consent of the suspect is one such established exception. *Schneckloth,* 412 U.S. at 219, 93 S.Ct. 2041. However, for consent to be a valid exception, that consent must be voluntary. *See id.* at 223, 93 S.Ct. 2041. Appellant asserts that his consent was not voluntary because he was an immigrant from El Salvador with only a fourth grade education and a limited grasp of the English language; thus his ability to read and comprehend the consent to search form was seriously impaired.

■ The validity of an alleged consent to search is a question of fact to be determined from all the circumstances. *Ohio v. Robinette,* 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); *Maxwell v. State,* 73 S.W.3d 278, 281 (Tex.Crim.App.2002). The federal constitution requires the State to prove the validity of the consent by a preponderance of the evidence, while the Texas Constitution requires the State to show by clear and convincing evidence that the consent was valid. *Maxwell,* 73 S.W.3d at 281. At a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses and their testimony. *Id.* The appropriate standard for reviewing a trial court's ruling on a motion to suppress is bifurcated, giving almost total deference to a trial court's determination of historical facts and reviewing *de novo* the court's application of the law. *Id.; Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).

■ After the hearing on appellant's motion to suppress, the judge entered findings of fact and conclusions of law. In her findings, which are supported by the record, the judge found that Officer Phillip Guerrero assisted in appellant's arrest. At the hearing, Guerrero testified that he knew appellant from the investigation of an unrelated case and knew that appellant spoke both English and Spanish. Guerrero read appellant his statutory warnings in Spanish, and appellant indicated that he understood those warnings. Guerrero also gave appellant a Spanish-language consent to search form requesting permission to search appellant's vehicle and his apartment. Guerrero explained the form to appellant in Spanish and also determined that appellant could read the form by having him read the first sentence aloud. Guerrero also told appellant that he had the right to refuse to consent to the search, and such a statement appeared on the form itself. Appellant signed the form shortly thereafter. Guerrero testified that appellant was not threatened or coerced into signing the consent form. The judge concluded that appellant gave his consent to search his vehicle and his apartment knowingly, freely, and voluntarily.

Considering all of the circumstances and giving proper deference to the trial court's determination, we hold that the State proved by clear and convincing evidence that appellant consented to the search of his home and his car.[3] *See generally, Martinez v. State,* 17 S.W.3d 677, 683 (Tex. Crim.App.2000); *Reasor v. State,* 12 S.W.3d 813, 819 (Tex.Crim.App.2000). Point of error one is overruled.

## VICTIM IMPACT EVIDENCE

■ Citing *Cantu v. State,* 939 S.W.2d 627 (Tex.Crim.App.1997), *cert. denied,* 522 U.S. 994, 118 S.Ct. 557, 139 L.Ed.2d 399 (1997), appellant complains in his second point of error that the trial court reversibly erred in overruling his objection to improper victim-impact testimony at the punishment phase of trial. Specifically, appellant complains about the testimony of Ahmed Fraz concerning an extraneous aggravated robbery appellant had purportedly committed. Fraz testified that he was with a friend, Mohammed Zubair, when they were attacked on Club Creek Drive in Houston. During the robbery, one of the robbers struck Zubair in the head with a gun and beat him so badly that his injuries caused mental impairment, and Zubair can no longer work or comprehend what he is doing. Although Fraz could not identify appellant as one of the robbers because they wore masks, other evidence including appellant's own admissions confirmed that appellant was the person who beat Zubair.

When the prosecutor asked the witness about the personality changes Zubair has suffered as a result of the attack, appellant objected "as to the form of the question." The judge sustained the objection. The prosecutor then asked Fraz what he noticed that was different about Zubair after the attack. Appellant objected that Fraz had not been qualified as a medical expert. The judge overruled this objection. Appellant made no other objections to Fraz's testimony regarding Zubair. We hold that appellant has failed to preserve any error regarding its admission because the objection at trial does not comport with the complaint raised on appeal. *See Ibarra v. State,* 11 S.W.3d 189, 197 (Tex.Crim.App. 1999), *cert. denied,* 531 U.S. 828, 121 S.Ct. 79, 148 L.Ed.2d 41 (2000). Furthermore, even if appellant had preserved error, Fraz's testimony is not the type of evidence that was characterized as inadmissi-

---

**3.** Because the State proved the validity of the consent under the greater burden of clear and convincing evidence, the federal burden of preponderance has also been met.

ble extraneous "victim impact evidence" in *Cantu v. State,* 939 S.W.2d at 637. Point of error two is overruled.

We affirm the judgment of the trial court.

WOMACK, J., concurred.