Affirmed and Memorandum Opinion filed January 27, 2004

















Affirmed and
Memorandum Opinion filed January 27, 2004.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-02-01272-CR

_______________

 

WILLIAM WILSON, III, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

___________________________________________________

 

On Appeal from the 262nd
District Court

Harris County, Texas

Trial Court Cause No. 895,414

___________________________________________________

 

M E M O R A N
D U M   O P I N I O N

 

            William Wilson, III, appeals a
conviction for murder[1] on
numerous grounds.  We affirm.

Background

            On November 19, 2001, the badly burned body of
appellant’s wife, Dorothy, was found by police in the trunk of an abandoned
automobile that had been set on fire. 

 class=Section2>

Hearsay Evidence

            Appellant’s first issue argues the
trial court denied him a fair trial by allowing inadmissible evidence to be
presented to the jury.  We review the
trial court’s decision to admit evidence under an abuse of discretion
standard.  Allen v. State, 108 S.W.3d 281, 284 (Tex. Crim.
App. 2003), petition for cert. filed,
__ U.S.L.W. __ (U.S. Oct. 9, 2003) (No. 03-6924).  We thus reverse a trial court’s decision only
if it is outside the zone of reasonable disagreement.  Id.

Disciplinary Records

            Appellant argues that the admission
of disciplinary records from the Texas Department of Corrections, showing that
he slapped Dorothy during one of her visits with him at prison, was error
because they were hearsay and not valid business records.

            To preserve error in admitting
evidence, a party must make a proper objection and obtain a ruling on that objection.[2]  In this case, before the disciplinary records
were admitted into evidence, a discussion took place both on and off the
record.  Not only does the record fail to
reflect any objection by appellant to the records as hearsay, or any adverse
ruling thereon, but it affirmatively reflects his counsel waiving any objection
to the records by stating, “no objection, Judge.”  Therefore, this complaint presents nothing
for our review and is overruled.

Officer Harris’s Statements

            Appellant also argues that the
admission of Officer Harris’s statement, that the address registered to the
license plate of the burned car was the same as that from which he received a
burglar alarm call on the evening of the murder, was hearsay because the State
was attempting to prove the truth of the matter asserted; namely, that there
was a connection between appellant’s home and the car in which the victim was
found.

            To preserve error in admitting
evidence, a party must object each time the inadmissible evidence is offered or
obtain a running objection.  Valle, 109 S.W.3d at 509.  Error in the admission of evidence is cured
where the same evidence comes in elsewhere without objection.  Id.

            In this case, by the time the
challenged evidence was admitted, Officers Tooke and
Miller had each already testified regarding the license plate’s registered
address being the same as appellant’s home address.  Because appellant had not objected when the
same evidence was admitted previously, this complaint presents nothing for our
review and is overruled.

Insurance Agent Fraley’s Statements

            Appellant also complains of the
following portions of testimony by insurance claims adjuster Fraley, which
pertain to a conversation he had with appellant two days after the murder:

State:  Was there any discussion with you and Mr.
Wilson about his wife?

Fraley:            Yes.

State:  What did he tell you about his wife?

Defense
Counsel:      I object.  Calls for hearsay.

Court: Overruled.

            *          *          *          *

Fraley:            He advised he was making
arrangements for his wife and he was disturbed due to the circumstances of her
death.

            State:  When you were talking with him about his wife,
did you ask him . . . if he had filed a missing person’s report on that?

            *          *          *          *

Fraley:            Yes, I did.

State:  And what was his response to that question?

Defense
Counsel:      I object . . . .  That would be hearsay.

Court: Overruled.

            *          *          *          *

Fraley:            His response was that he had not
filed a missing person’s report.

            The State asserts, and appellant
does not refute, that these statements were offered to show appellant’s
knowledge of his wife’s death before the body had been identified, i.e., rather than the truth of the
matters asserted.  As such, they were
either not hearsay[3] or
were subject to the hearsay exception for showing appellant’s then existing
state of mind.  See Tex. R. Evid. 803(3). 
In addition, appellant waived this complaint by failing to object when
the State subsequently elicited the same evidence, “So, on the 21st, he told
you his wife was dead?” and Fraley responded, “That’s correct.”  Accordingly, appellant’s challenge to
Fraley’s statements is overruled.

Robert Chilo’s Statements

            Appellant also contends that the
following statements by Dorothy’s brother, Robert Chilo,
were improperly admitted hearsay: (1) his affirmative response to the question,
“Did she say anything to you about wanting [appellant] to leave the house?”;
and (2) Chilo’s recounting of Dorothy’s statement,
“Ya’ll just don’t know what William do to me.” 
Appellant contends that these statements were not within the hearsay
exception for statements reflecting state of mind but were simply a recount of
Dorothy’s memory of events.  See, e.g., Dorsey v. State, 24 S.W.3d
921, 929 (Tex. App.—Beaumont 2000, no pet.). 
Because each statement appears to have been offered only to show Dorothy’s
fear of appellant, and not for the truth of the matters asserted, appellant’s
challenge fails to demonstrate error by the trial court in admitting this
testimony and is overruled.

Hospital Records

            Appellant contends that hospital
records admitted into evidence were also inadmissible hearsay.  However, to preserve error, the complaint at
trial must comport with the complaint raised on appeal.  Guevara v. State, 97 S.W.3d
579, 583 (Tex. Crim. App. 2003).  In
this case, appellant objected to the hospital records at trial only on the
basis of relevance.  Therefore, this
hearsay complaint presents nothing for our review, and appellant’s first issue
is overruled.

Violation of Confrontation Clause

            Appellant’s second issue contends
that the admission of inadmissible hearsay violated his rights under the
Confrontation Clause.  However, because
appellant failed to object at trial on this ground, his second issue presents
nothing for our review and is overruled.  See Wright v. State, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000).

Exclusion of Admissible Hearsay for Defense

            Appellant’s third issue argues that
he was denied a fair trial by the trial court’s refusal to apply the “state of
mind” hearsay exception[4]
equally to both sides.  As an example of
the alleged disparity in treatment, appellant cites the court’s sustaining of
the State’s objection to a statement by appellant’s parole officer that
appellant was “very upset,” while allowing Dorothy’s brother to testify that
she wanted appellant to move out of her house.

            To the extent a trial court’s
rulings are within its discretion and thus not erroneous, appellant has cited
no authority requiring that such discretion be exercised, and rulings be made,
uniformly or equally for both sides. 
Moreover, despite this particular portion of the parole officer’s
testimony being excluded, appellant and the State each elicited the same
evidence from that witness without objection. 
Under these circumstances, appellant’s third issue affords no basis for
relief and is overruled.

Ineffective Assistance of Counsel

            Appellant’s fourth issue argues he
was denied effective assistance of counsel when his trial counsel failed to:
(1) object to the hospital and penitentiary records based on violations of his
rights under the Confrontation Clause; and (2) preserve error regarding
improperly admitted hearsay testimony by failing to request a jury instruction
to disregard and a mistrial after his objections were sustained.

            A defendant’s right to effective
assistance of counsel is denied when a defense attorney’s performance falls
below an objective standard of reasonableness and thereby prejudices the
defense to the extent of causing the result of the proceeding to be
different.  Yarborough v. Gentry, 124 S. Ct. 1, 4
(2003); Murphy v. State, 112 S.W.3d
592, 601 (Tex. Crim. App. 2003). 
Ineffective assistance claims must be affirmatively demonstrated in the
record.  Bone v. State, 77 S.W.3d 828, 835 (Tex. Crim. App.2002).  If
counsel’s reasons for his conduct do not appear in the record and there is at
least a possibility that the conduct could have been legitimate trial strategy,
we will defer to counsel’s decisions and deny relief on an ineffective
assistance claim on direct appeal.  Murphy, 112 S.W.3d at 601.  To establish ineffective assistance for
failing to object to evidence, an appellant must establish that the evidence
was inadmissible.  Ortiz v. State, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002), cert.
denied, 123 S. Ct. 1901 (2003).

            In this case, because appellant has
not developed a record of his counsel’s reasons for his actions, he has failed
to rebut the presumption of sound trial strategy on these matters.  Similarly, with regard to his Confrontation
Clause argument, appellant has failed to offer authority or reasoning to
demonstrate that the public records and business records exceptions, under
which the exhibits were admitted, are not “firmly rooted hearsay exceptions” or
that the evidence does not contain other “particularized guarantees of
trustworthiness.”  See Lilly v. Virginia, 527 U.S. 116,
124-25 (1999).  Accordingly, appellant’s
fourth issue fails to establish that he was denied effective assistance of
counsel and is overruled.

Admission of Autopsy Photographs

            Appellant’s fifth issue argues the
trial court erred when it admitted gruesome autopsy photographs.  He urges the photos were neither relevant[5] nor
probative of any contested matter in the case and that their admission was
unduly prejudicial because other testimony covered that subject and other, less
gruesome, photos could have adequately explained the coroner’s testimony.  Appellant specifically complains of four
color, close-up, photos, depicting injuries Dorothy sustained to her face and
her unclothed body.

            Although relevant, evidence may be
excluded if its probative value is substantially outweighed by the danger of
unfair prejudice, confusion of the issues, or misleading the jury or by
consideration of undue delay, or needless presentation of cumulative
evidence.  Tex. R. Evid. 403.  However, rule 403 favors admissibility, and
presumes relevant evidence is more probative than prejudicial.  Rayford v. State,
__ S.W.3d __, __ (Tex. Crim. App. 2003).

            A trial court’s ruling on the
admissibility of photographs is reviewed for abuse of discretion and will thus
be upheld if it is within the zone of reasonable disagreement.  See
id. at __.  Autopsy photographs are
generally admissible as long as the disturbing nature of the photos is
primarily due to injuries caused by the appellant, i.e., rather than the autopsy itself.  See
Hayes v. State, 85 S.W.3d 809, 815-16 (Tex. Crim. App. 2002).

            In this case, of the nearly two
hundred autopsy photos taken by the medical examiner, the State introduced only
twelve.[6]  Eight of these photos were only three-by-five
inches.  The remaining four photos were
eight-by-ten inch close-ups of Dorothy’s face and teeth that were necessary to
identify her body, both visually and through dental records.  Unclothed areas of her body and charring in
the photos reflected the use of an accelerant in the fire that burned off most
of her clothes.  Except for one photo,
which showed an incision the medical examiner made to Dorothy’s left wrist to
show a hemorrhage under the skin, the photos depict only injuries caused by the
fire and thus appellant’s actions.  In
overruling appellant’s objection to the photos, the trial judge stated:








I agree with Mr. Knight that they are horrible
pictures for a person to look at; however, I do not see any other way for the
State to be able to show the injuries alleged to have occurred to this
woman.  I have no doubt the State has
done everything they can do to pare this volume down.  I find that they are definitely prejudicial.  They are the only way the State has to
illustrate what the medical examiner will testify about.

 

Under these
circumstances, we cannot say that the trial court’s overruling of appellant’s
rule 403 objection to the photos was outside the zone of reasonable
disagreement.  Accordingly, appellant’s
fifth issue is overruled.

Sufficiency
of the Evidence

            Appellant’s
sixth and seventh issues argue that the evidence was legally and factually
insufficient to prove he committed the murder because the State’s evidence had
no fingerprints, eyewitnesses, or motive but was instead entirely
circumstantial, amounting only to a suggestion that he was present at the
scene.  He further relies on his denial
of the charges and his alibi in a phone conversation with Dorothy’s sister.

            Evidence is legally insufficient if,
viewed in the light most favorable to the prosecution, no rational jury could
find the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319
(1979); Bustamante v. State, 106 S.W.3d 738, 740 (Tex. Crim. App. 2003). 
The evidence supporting a verdict is factually insufficient if, viewed
in a neutral light, it is so weak or so against the overwhelming weight of
contrary evidence as to render the verdict clearly wrong and manifestly unjust.
 Bustamante, 106
S.W.3d. at 740.  When reviewing a case
comprised wholly of circumstantial evidence, the standard of review is the same
as it is for reviewing cases in which direct evidence exists.  Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

            In this case, Lynette Harrison
Meyers, a neighbor across the street from the Wilsons, testified
that at about 9:15 that
night, she heard a car door shut and then looked out her front window.  She noticed Dorothy’s red car backed into the
driveway and that the carport light was out. 
She saw appellant plug the carport light back in and close the trunk of
the red car.  

 class=Section4>

About
twenty minutes later she heard the car start and watched appellant drive out of
the driveway.  DeMarcus
Condet and Jason Harrison, Meyer’s son, testified to
seeing appellant walking back towards his house between 9:30 and 10:00 p.m.

            Yola
Chavez, Dorothy’s sister, testified that appellant called her that night to ask
her if Dorothy had stopped by.  He
specifically mentioned that the time was ten minutes until ten.  Chavez testified that appellant called her a
second time, asking again if she had seen Dorothy, specifically mentioning that
it was then ten minutes after ten, and then stating that his burglar alarm was
going off.

            Joan Austin, who lived around the
corner from where Dorothy’s car was found and had discovered it burning,
testified that she called the fire department a little bit after ten.  M. L. Pena, an arson investigator with the
Houston Fire Department (“HFD”), testified that HFD arrived at the scene at 10:06. 
T.D. Wood, another arson investigator with HFD, testified that the fire
burned for about three to six minutes before it was extinguished and that Dorothy’s
charred body was found in the trunk of the car. 
Wood further testified that an accelerant was used to hasten the burning
of Dorothy’s car and that he detected gasoline at the scene even though the
car’s gas tank had neither ignited nor exploded.

            Officers Tooke
and Burrell testified to recognizing the smell of gasoline on appellant’s
jacket that was pulled from the washing machine in his house.  Officer Harris testified that he smelled
gasoline as he walked through appellant’s laundry room, that the door to the
washing machine was open, and that a white jacket was on top of it.  James Miller, a chemist with the Houston
Police Department Crime Lab, testified to finding gasoline residue on that
jacket.

            Brian Harris, a homicide
investigator, testified that investigators responded to the burglar alarm at
appellant’s house and that appellant told them his wife had gone to the grocery
store and to the post office but had not yet returned.  Harris also testified that while walking
through the house, he noticed female-style eyeglasses on the bedroom dresser
next to an insurance card and some jewelry. 
Harris further testified that, in his voluntary statement, appellant
stated that Dorothy did not need her glasses to drive.  However, Dorothy’s optometrist testified
Dorothy had a cataract in one eye and was not able to drive without her
eyeglasses.

            Another investigating officer, J.B. Sweatt, testified that appellant told him that he
(appellant) had been home all evening. 
However, Sweatt noticed that the hood of
appellant’s van was warm even though it was a cool night.  In addition, while Sweatt
was transporting appellant to the station for questioning, appellant stated, “I
thought we were going to see our car,” reflecting a knowledge, before he was
told, of where the car was located relative to the route they were taking.  As noted previously, insurance adjuster
Fraley also related comments by appellant reflecting a knowledge of Dorothy’s
death before anyone told him of it.

            Veronique DeLattre,
chief forensic dental consultant for Harris County Medical Examiner’s Office
and Harminer Narula,
assistant medical examiner for Harris County, testified
that, due to the intensity of charring, it took ten days to identify Dorothy’s
body by comparing dental records. 
Officer Harris testified that while discussing potential results of an
autopsy with appellant, appellant asked whether it could reveal a head
injury.  The autopsy revealed Dorothy had
sustained trauma to the left side of her head. 
Viewed in the light most favorable to the verdict, this evidence was
legally sufficient to prove beyond a reasonable doubt that appellant committed
the offense.

            In support of his factual
sufficiency challenge, appellant directs us to his arguments in his first
issue, regarding the admission of hearsay evidence, but does not explain how
his contentions under that issue support a factual sufficiency challenge.  The harm analysis in his first issue states
that, without the challenged items of evidence, the evidence against him would
have been insufficient.  However, because
his first issue failed to establish that the trial court erred in admitting any
evidence, it does not support this contention.[7]  Therefore, appellant’s sixth and seventh
issues fail to demonstrate the legal or factual insufficiency of the
evidence.  Accordingly, they are
overruled, and the judgment of the trial court is affirmed.

 

                                                                        /s/        Richard H. Edelman

                                                                                    Justice

 

Judgment rendered and Memorandum
Opinion filed January
 27, 2004.

Panel consists of Justices Edelman,
Frost, and Guzman.

Do Not Publish — Tex. R. App. P. 47.2(b).

 











[1]           The jury found appellant guilty of
murdering his wife, Dorothy, and the trial court sentenced him to life
imprisonment.





[2]           Tex. R. Evid. 103(a)(1); Tex.
R. App. P. 33.1(a); Valle v. State,
109 S.W.3d 500, 509 (Tex. Crim. App. 2003).





[3]           See Tex. R. Evid. 801(c),
(d).





[4]           See Tex. R. Evid. 803(3).






[5]           However, because Wilson’s objection
at trial was to prejudice, not relevance, we confine our consideration to that
issue.





[6]           These twelve photos were obtained
and reviewed by the court.





[7]           Moreover, when conducting a legal sufficiency review, an appeals
court considers all evidence in the record, whether admissible or
inadmissible.  Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim.
App. 1999).  Appellant has cited no
authority indicating that inadmissible evidence is not considered in a factual sufficiency review.